**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0227
Javaris Compton
v.
The State

On Appeal from the Superior Court of Hancock County
No. 2021SUCR007

Decided: June 2, 2026

LaGrua, Justice.

Appellant Javaris Compton appeals his conviction for malice murder related to the stabbing death of Rashad Bolton.[1] On appeal, Compton argues that the trial court abused its discretion in denying his motion for a mistrial. Because Compton failed to preserve this issue for appeal, we affirm.

The evidence presented at trial showed that, on January 4, 2021, Compton and Bolton were incarcerated and shared a cell at

---

[1] Bolton was killed on January 4, 2021. On March 25, 2021, a Hancock County grand jury indicted Compton for the following counts: malice murder (Count 1); felony murder predicated on aggravated assault (Count 2); and aggravated assault (Count 3). Compton was tried from April 29 to 30, 2024, and the jury found him guilty on all counts. The trial court sentenced Compton to life without the possibility of parole on Count 1. The remaining counts merged or were vacated by operation of law. Compton filed a timely motion for new trial, which he later amended through new counsel on May 19, 2025. After holding a hearing on the motion, the trial court denied the motion on August 5, 2025. Compton filed a timely notice of appeal, and his case was docketed to this Court's term beginning in December 2025 and submitted for a decision on the briefs.

Hancock State Prison. That morning, Compton and Bolton were locked inside their cell when Correctional Officer Joshua Andrews heard inmates yelling his name. The inmates told Officer Andrews, "That dude in the next cell need help. If you don't get him some help, he going to die." Officer Andrews approached Compton and Bolton's cell, where he observed that Bolton had blood on his chest and appeared to be injured. Officer Andrews then handcuffed Bolton and Compton through the cell door's open "flap." When the emergency response team later arrived and opened the cell door, Officer Andrews observed that Compton had "jumped" his handcuffs by moving them from his back to his front. Compton then pulled a "shank" from his pants, which the correctional officers took from him. Bolton did not have a weapon, and no weapons were found in Compton and Bolton's cell.[2]

After Compton was removed from the cell, correctional officers took him to the medical unit. While Compton was there, Warden Annettia Toby asked if he was okay. Compton responded that he "did not want Bolton in his room," "was having some family issues on the outside," and wanted to be left alone.

In his sole enumeration of error, Compton argues that the trial court abused its discretion by declining to grant a mistrial after the State introduced evidence that Compton refused to speak to an investigator after being advised of his *Miranda* rights.[3]

At trial, the State called Georgia Department of Corrections Special Agent Timothy Konzelman as a witness, and Agent Konzelman engaged in the following exchange with the

---

[2] By the time medical personnel tended to Bolton, he was not breathing and did not have a pulse. The medical examiner testified that Bolton's cause of death was multiple sharp force injuries.

[3] See *Miranda v. Arizona*, 384 US 436 (1966).

prosecutor:

> [PROSECUTOR]: [A]t some point did you attempt to go to speak to Mr. Compton?
>
> [AGENT KONZELMAN]: Yes.
>
> [PROSECUTOR]: And did you read him his *Miranda* rights?
>
> [AGENT KONZELMAN]: Yes, I read him his rights, and he refused to talk with me.
>
> [PROSECUTOR]: And that's absolutely his right; correct?
>
> [AGENT KONZELMAN]: Yeah.
>
> [PROSECUTOR]: But did you then -- did you ask Warden Toby to go talk to him on your behalf or anything like that?[4]
>
> [AGENT KONZELMAN]: No.
>
> [PROSECUTOR]: Did you say, "Hey, go see what he can say" or anything like that?
>
> [AGENT KONZELMAN]: No.
>
> [PROSECUTOR]: In fact, until you talked to Warden Toby afterward, were you aware that she had gone and talked to him?
>
> [AGENT KONZELMAN]: No.

Compton's trial counsel then requested to approach the bench, where he objected to Agent Konzelman's earlier testimony

---

[4] Warden Toby testified earlier in the trial—without objection—about the comments that Compton made to her.

3

by saying, "The testimony that [Compton] refused to talk to [Agent Konzelman], that should not be any evidence that enters in." After some discussion, Compton's trial counsel moved for a mistrial. The trial court sustained the objection and stated that it would give a curative instruction, but it denied the mistrial motion. Compton's trial counsel said that he would "welcome any instruction" but did not believe it would cure the issue. After the trial court gave the curative instruction, telling the jury to disregard Agent Konzelman's testimony, Compton renewed his mistrial motion, which the trial court again denied. The prosecutor then asked Agent Konzelman two more questions before concluding the direct examination.

Because Compton did not move for a mistrial "at the earliest opportunity in the trial court," *Moss v. State*, 322 Ga. 757, 762 (2025) (quotation marks omitted), his claim that the trial court abused its discretion by denying his mistrial motion is not preserved for appeal. It is well settled that, to preserve a motion for mistrial for appellate review, an appellant must make a contemporaneous motion at the time he becomes aware of the matter giving rise to the motion. See id. See also *Smith v. State*, 323 Ga. 246, 253 (2026). Here, that would have been when Agent Konzelman testified that Compton refused to speak to him.[5]

For example, in *Moss*, a detective testified at trial that she

---

[5] Compton's trial counsel could have objected after the prosecutor first asked Agent Konzelman if he attempted to speak to Compton if counsel thought the question was seeking testimony from the agent that Compton refused to speak to him. See generally *Glover v. State*, 309 Ga. 102, 106 (2020) (noting that evidence about the defendant's exercise of the right to silence is generally considered improper). Notably, in his appellant's brief, Compton acknowledges that this question was objectionable, asserting that "[t]here simply is no reason to ask an investigator if he spoke with a defendant if the defendant refused to talk."

4

"attempted to interview [the appellant]," but the appellant did not immediately object and move for a mistrial. 322 Ga. at 761. Instead, the appellant permitted the State to finish questioning the detective before moving for a mistrial based on the detective's statement. Id. at 761–62. We concluded that a contemporaneous motion would have been one that was made at "the moment when [the detective] testified that she 'attempted' to interview [the appellant]." See id. at 762. Because the motion was not made at that time and was therefore not contemporaneous, we held that the appellant's claim that the trial court abused its discretion by denying his mistrial motion was not preserved for appellate review. Id.

Similarly, in *Pittman v. State*, the prosecutor asked a witness a question that elicited testimony that the appellant later argued was in violation of a pretrial ruling. 318 Ga. 819, 828 (2024). But the appellant did not object to the question or the witness's answer, and the appellant allowed the State to finish the direct examination of the witness before moving for a mistrial on the basis that the witness's testimony violated the trial court's pretrial ruling. See id. We held that the appellant's claim that the trial court abused its discretion in denying his mistrial motion was not preserved for appeal because, among other things, the appellant "did not object to the State's question, which clearly was intended to elicit the [complained-of testimony], and did not move to strike [the witness's] answer, and then waited until after the prosecutor completed the direct examination to make a motion for mistrial." Id. at 829.

In this case, Compton did not object after the prosecutor asked Agent Konzelman if he attempted to speak to Compton, nor did Compton immediately move for a mistrial after Agent Konzelman said that Compton refused to talk to him. Instead,

5

Compton allowed the State to continue questioning Agent Konzelman about an unrelated subject before eventually objecting to the testimony and moving for a mistrial. As such, Compton failed to make a contemporaneous motion for a mistrial and therefore failed to preserve this issue for appellate review. See *Moss*, 322 Ga. at 762; *Pittman*, 318 Ga. at 829; *Kilpatrick v. State*, 308 Ga. 194, 199–200 (2020) (holding that a mistrial motion based on the admission of improper character evidence during an investigator's direct examination was not contemporaneous and therefore was not preserved for appellate review, where it was made after the investigator had "testified for some time about how the [evidence at issue] fit into the overall timeline of events"); *Thaxton v. State*, 260 Ga. 141, 143 (1990) ("A motion for mistrial not made at the time the testimony objected to is given is not timely and will be considered as waived because of the delay in making it."); *St. Romaine v. State*, 251 Ga. App. 212, 213 (2001) (concluding that the defendant's motion for a mistrial following the introduction of testimony concerning his possession of drugs "was untimely, as he permitted seven questions to be asked on the subject of marijuana after it came up and then four more questions on cocaine before making his motion"). See also *Jackson v. State*, 306 Ga. 266, 270–72 (2019) (relying, in part, on *St. Romaine*, 251 Ga. App. at 213, to hold that the appellant's claim that the trial court abused its discretion by denying his mistrial motion was not preserved for appeal). Cf. *Bates v. State*, 317 Ga. 809, 819 (2023) (noting that the defendant made a contemporaneous motion when he objected "as soon as" the witness testified about the prohibited topic and then moved for a mistrial); *Johnson v. State*, 292 Ga. 785, 787 (2013) (holding that appellant's claim that the State improperly questioned him during cross-examination about his failure to come forward and make a statement was waived because he "did not object to the

6

cross-examination … until a bench conference that he requested two questions later"). Because Compton did not preserve his sole enumeration of error for appellate review, we affirm.

*Judgment affirmed. All the Justices concur.*