In the Supreme Court of Georgia

Decided:     June 20, 2016

S15G1820.  ZILKE v. THE STATE.

BENHAM, Justice.

This case comes to us from the grant of a petition for a writ of certiorari.

As set forth by the Court of Appeals, the facts are as follows:

> Decari Mason is a POST-certified police officer employed at Kennesaw State University ("KSU"). At approximately 1:42 a.m. on May 5, 2013, Mason was returning to KSU after delivering an arrestee to the Cobb County Adult Detention Center. It was dark and raining heavily at the time.
>
> While traveling down Powder Springs Road in Cobb County, Mason observed [Bajrodin] Zilke driving without activated headlights or taillights and "severely failing to maintain lane." Mason initiated a traffic stop and approached Zilke, who smelled of alcohol, had bloodshot, watery eyes, was unsteady on his feet, and admitted to consuming two beers. At Mason's request, Zilke blew into an Alco-sensor, which registered positive for alcohol. Concluding that Zilke was under the influence of alcohol to the extent he was less safe to drive, Mason arrested him. Zilke submitted to a state-administered chemical breath test on the Intoxilyzer 5000 at 3:16 a.m. which revealed a blood alcohol level of 0.08.
>
> Zilke was charged with two counts of driving under the influence, failing to maintain lane, and operating a vehicle without headlights. He subsequently moved to suppress evidence of the breath test, arguing that Mason lacked jurisdiction to arrest him

because, without dispute, the traffic stop did not occur on or near KSU property. The trial court granted the motion....

State v. Zilke, 333 Ga. App. 344 (773 SE2d 489) (2015).

The Court of Appeals reversed the trial court's decision to grant appellant's motion to suppress. Relying on OCGA § 17-4-23 (a)[1] and cases that are the progeny of Glazner v. State, 170 Ga. App. 810 (318 SE2d) (1984), the Court of Appeals held that a POST-certified campus police officer is authorized to make arrests for traffic offenses committed in his presence though outside the territorial limits of the campus at issue. Id. at 345. We

---

[1] At the time these events occurred, OCGA § 17-4-23 (a) (2013) provided:

> A law enforcement officer may arrest a person accused of violating any law or ordinance governing the operation, licensing, registration, maintenance, or inspection of motor vehicles by the issuance of a citation, provided the offense is committed in his presence or information constituting a basis for arrest concerning the operation of a motor vehicle was received by the arresting officer from a law enforcement officer observing the offense being committed, except that, where the offense results in an accident, an investigating officer may issue citations regardless of whether the offense occurred in the presence of a law enforcement officer. The arresting officer shall issue to such person a citation which shall enumerate the specific charges against the person and the date upon which the person is to appear and answer the charges. Whenever an arresting officer makes an arrest concerning the operation of a motor vehicle based on information received from another law enforcement officer who observed the offense being committed, the citation shall list the name of each officer and each must be present when the charges against the accused person are heard.

OCGA §17-4-23 was amended in 2015; however, the amendments are irrelevant to resolving this appeal. See 2015 Ga. Laws Act 190, § 2 (S.B. 160).

granted appellant's petition for a writ of certiorari to determine whether the Court of Appeals erred. We now reverse for the reasons set forth below.

In this case, the trial court excluded evidence on the grounds that Officer Mason, who was a POST-certified officer employed by KSU, had no authority to arrest appellant because, at the time of arrest, Officer Mason was outside his statutorily-designated territorial jurisdiction. Here, appellant does not contest the traffic stop itself, but contends that Officer Mason had no authority to arrest or gather evidence because of OCGA §20-3-72 which states that campus police officers "shall have the power to make arrests" on campus and within 500 yards of campus. We agree that Officer Mason had no authority to effect a custodial arrest of appellant outside the jurisdiction conferred by OCGA §20-3-72. Contrary to the contentions of the State and the reasoning of the Court of Appeals, OCGA § 17-4-23 cannot reasonably be construed to authorize Officer Mason's arresting appellant. First, by its plain terms, OCGA § 17-4-23 (a), which is a criminal procedure statute, only authorizes an arrest "*by the issuance of a citation*" if a person commits a motor vehicle violation within the law enforcement officer's presence. (Emphasis supplied.) The statute does not confer the ability to make a custodial arrest for a motor vehicle violation, unless that person fails to answer the citation by appearing in court and, then, any

3

apprehension of the person must be made pursuant to a warrant. OCGA § 17-4-23 (b).

Indeed, the purpose of OCGA § 17-4-23 has never been to enlarge the territorial boundaries of the various law enforcement agencies in the state, but rather to give law enforcement officers the discretion to write a citation in lieu of making a custodial arrest for motor vehicle violations. See Brock v. State, 196 Ga. App. 605 (1) (396 SE2d 785) (1990) ("For the convenience of the motoring public and the police, [OCGA § 17-4-23 (a)] gives the officer the option of issuing a citation rather than going through the time-consuming ordeal of a custodial arrest."). See also Lopez v. State, 286 Ga. App. 873 (1) (650 SE2d 430) (2007). The precursor to OCGA § 17-4-23 was enacted in 1969. See 1969 Ga. Laws, p. 759 § 1. That initial legislation provided that the Act was:

> to provide that a law enforcement officer may arrest persons accused of violating any law or ordinance governing the operation, licensing, registration, maintenance and inspection of motor vehicles by the issuance of a citation; to provide that persons so arrested may be issued citations in which they shall be informed of the specific violations and charges to which they are to answer and the date upon which they are required to appear and answer said charges; to provide for the issuance of bench warrants for the apprehension of persons who fail to answer such citations; to

4

provide the procedures connected with the foregoing; to repeal conflicting laws; and for other purposes.

The act was subsequently amended in 1975. See 1975 Ga. Laws, p. 874 §§ 1-4. The primary purpose of the 1975 amendment was to add language that the motor vehicle violation had to be witnessed by a law enforcement officer, but not necessarily by the arresting officer; and that both officers had to appear in court. Nothing in the statute's history indicates that the legislature ever intended OCGA § 17-4-23 to allow officers to arrest traffic violators outside the jurisdiction of their respective law enforcement agencies. Therefore, we disapprove of Glazner v. State to the extent that case and its progeny[2] hold OCGA § 17-4-23 (a) authorizes a law enforcement officer, including a campus police officer, to make a custodial arrest outside the jurisdiction of the law enforcement agency by which he is employed. [3]

---

[2] See Sullivan v. State, 308 Ga. App. 114 (706 SE2d 618) (2011); State v. Bethel, 307 Ga. App. 508 (705 SE2d 860) (2010); Griffis v. State, 295 Ga. App. 903 (673 SE2d 672) (2009); Duprel v. State, 301 Ga. App. 469 (687 SE2d 863) (2009); Weldon v. State, 291 Ga. App. 309 (661 SE2d 672) (2008); Delong v. Domenici, 271 Ga. App. 757 (610 SE2d 695) (2005); State v. Picot, 255 Ga. App. 513 (565 SE2d 865) (2002); State v. Hoover, 253 Ga. App. 98 (558 SE2d 91) (2001); State v. Heredia, 252 Ga. App. 89 (555 SE2d 91) (2001); State v. Gheris, 242 Ga. App. 384 (528 SE2d 300) (2000); Edge v. State, 226 Ga. App. 559 (487 SE2d 117) (1997); Dickerson v. State, 193 Ga. App. 605 (388 SE2d 736) (1989).

[3] We express no opinion as to the validity of an extraterritorial arrest made in "hot pursuit" of a suspect who flees across the jurisdictions of multiple law enforcement agencies.

5

We do note that pursuant to OCGA § 17-4-20 (a) (2) (A), a law enforcement officer may make a custodial arrest without a warrant if "[t]he offense is committed in such officer's presence or within such officer's immediate knowledge." For example, weaving in and out of a roadway lane may justify a warrantless custodial arrest. See Lopez v. State, supra, 286 Ga. App. at 875. A warrantless custodial arrest for drunk driving may also be justified. See, e.g., Cheatham v. State, 204 Ga. App. 483 (1) (419 SE2d 920) (1992). Yet, as with OCGA §17-4-23, nothing in OCGA § 17-4-20 expands the statutorily-imposed jurisdiction of a campus police officer. We are likewise unconvinced that Officer Mason's POST-certification has any bearing on the territorial limits of his jurisdiction under OCGA §20-3-72. Being POST-certified simply means the officer has met the minimum requirements to be a "peace officer" in this state (see OCGA §§ 35-8-2 (8) (A), 35-8-8 (a) and 35-8-10); such status, however, does not confer extraterritorial jurisdiction.

Nevertheless, the State contends that Officer Mason was still authorized to arrest appellant as a private person per OCGA § 17-4-60 (i.e., a citizen's arrest). This argument, however, does nothing to preclude the trial court from suppressing the evidence in this case. If Officer Mason had acted as a private

person effecting a citizen's arrest,[4] the most he could do would be to deliver appellant to a judicial officer or "deliver [appellant] and all effects removed from [appellant] to a peace officer of this state." OCGA § 17-4-61 (a). As a private person making a citizen's arrest, Officer Mason would not have been authorized per OCGA § 17-4-61 (a) to give any field sobriety test, to demand appellant submit to the Alco-sensor test, to give an implied consent notice, to demand appellant submit to a breathalyzer test, or to otherwise engage in any sort of law enforcement investigation. The record shows that in this case, the City of Marietta police came to the scene, but then left for reasons unknown. Had the City of Marietta police stayed, they could have assumed custody of appellant and then they would have been required to take him to a judicial officer who was authorized to receive an affidavit and to issue a warrant. OCGA §17-4-61 (b) ("A peace officer who takes custody of a person arrested by a private person shall immediately proceed in accordance with Code Section 17-4-62."); OCGA §17-4-62. Thus, we find the State's citizen's arrest argument unpersuasive.

---

[4] We express no opinion and make no determination as to whether a POST-certified police officer who is in uniform, who is driving in a marked vehicle outside of his jurisdiction, and who uses blue lights and/or sirens to effect a stop may be validly characterized as a "private person" as that term is used in OCGA § 17-4-60.

The trial court did not err when it determined that Officer Mason did not have any authority to arrest appellant beyond 500 yards of the KSU campus. Accordingly, the judgment of the Court of Appeals cannot be sustained.

We note that suppression of evidence is an extreme sanction that is used only sparingly as a remedy for unlawful government conduct. See State v. Lampl, 296 Ga. 892, 896 (770 SE2d 629) (2015).

> Thus, this Court has held that the exclusionary rule cannot be imposed "as a judicially-created remedy ... absent a violation of a constitutional right." The legislature may also provide for the exclusion of evidence or its fruits as a matter of statutory law, but suppression is not required merely because evidence was obtained in violation of a statute. Instead, "the exclusionary rule is an appropriate sanction for a statutory violation only where the statute specifically provides for suppression as a remedy or the statutory violation implicates underlying constitutional rights such as the right to be free from unreasonable search and seizure."

State v. Chulpayev, 296 Ga. 764, 776-777 (770 SE2d 808) (2015) (citations omitted). See also Lampl, 296 Ga. at 897 ("While in rare instances the exclusionary rule has been applied as a remedy for the violation of a statute, this generally holds only if the statutory violation implicates underlying constitutional interests.").

8

The trial court in this case did not identify the legal ground, constitutional or statutory, on which it was excluding the evidence resulting from appellant's arrest in violation of OCGA § 20-3-72. Nevertheless, the State did not argue to the trial court that the exclusionary rule does not apply in this context; the State did not enumerate the remedial portion of the trial court's order as error in its appeal to the Court of Appeals; and we did not grant certiorari to address the exclusionary rule issue. Accordingly, that aspect of the trial court's order is not before us for review, and we express no opinion on the exclusionary rule issue. On the challenge raised by the State, the trial court's suppression order is upheld.

Judgment reversed. All the Justices concur.

S15G1820.  ZILKE v. THE STATE.


NAHMIAS, Justice, concurring.

I concur fully in the Court's opinion, and I write separately only to emphasize that with regard to motions to suppress evidence in criminal cases, it is important to consider not only whether the alleged constitutional or statutory violation occurred, but also whether exclusion of the resulting evidence is an authorized remedy for such a violation.  With regard to the exclusionary rule issue in this case, for example, I note that the Supreme Court of the United States has held that a warrantless arrest for crimes committed in the presence of an arresting officer may be reasonable under the Fourth Amendment even if the arrest was in violation of a state arrest statute, see Virginia v. Moore, 553 U.S. 164, 177-178 (128 SCt 1598, 170 LE2d 559) (2008), and several lower courts have rejected exclusion of evidence for violations of state statutes limiting the territorial jurisdiction of the arresting officer, see, e.g., United States v. Sed, 601 F3d 224, 228-229 (3d Cir. 2010); State v. Smith, 908 A2d 786, 788-790 (N.H. 2006).  Moreover, OCGA § 20-3-72 does not speak in terms of the admission or exclusion of evidence, and it is not apparent that any other statute directs the exclusion of evidence as a

remedy for an extraterritorial arrest. Compare OCGA § 16-11-67 ("No evidence obtained in a manner which violates any of the provisions of this part [regulating wiretapping and electronic surveillance] shall be admissible in any court of this state except to prove violations of this part."); OCGA § 24-8-824 ("To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."); OCGA § 40-5-67.1 (b) ("If any such notice [concerning implied consent] is used by a law enforcement officer to advise a person of his or her rights regarding the administration of chemical testing, such person shall be deemed to have been properly advised of his or her rights . . . and the results of any chemical test, or the refusal to submit to a test, shall be admitted into evidence against such person.").

Thus, there is a substantial question regarding whether it was proper for the trial court to suppress evidence as a remedy for the violation of OCGA § 20-3-72 that the court correctly found in this case. Because the State has not challenged the remedial aspect of the trial court's order, the Court appropriately does not decide this question today. But this discussion should highlight the importance of considering the remedial element of motions to suppress evidence in future cases of this sort.

2

I am authorized to state that Justice Blackwell joins in this concurrence.